IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GLENARD C. THORNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-0695 |
| | ) | |
| JAMES M. HOLLWAY, Warden,[1] | ) | Judge Trauger |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Glenard C. Thorne, a state prisoner incarcerated at the West Tennessee State Penitentiary in Henning, Tennessee, filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus. (ECF No. 1.) The respondent filed an answer in opposition to the petition (ECF No. 14), along with a complete copy of the underlying state-court record. The petition is ripe for review, and this court has jurisdiction. 28 U.S.C. § 2241(d).

Upon consideration of the petition and supporting statement of facts, the answer, and the underlying state-court record, the court finds for the reasons set forth herein that the petitioner is not entitled to relief on the grounds asserted. The court further finds that an evidentiary hearing is not necessary, *see Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief), and that the appointment of counsel is not warranted. *See* Rule 8(c), Rules Gov'g § 2254 Cases (requiring appointment of counsel to represent indigent petitioner if an evidentiary hearing is necessary). Thorne's petition will be denied and this matter dismissed. The petitioner's request for appointment of counsel will be denied as moot.

## I.      PROCEDURAL BACKGROUND

On August 15, 2008, the petitioner was found guilty by a Davidson County jury of two counts of

---

[1] The court takes judicial notice that James M. Holloway was recently appointed warden of the West Tennessee State Penitentiary where the petitioner is in custody. *See* http://www.tn.gov/correction/institutions/wardenbio.html. Pursuant to Fed. R. Civ. P. 25(d), Mr. Holloway is automatically substituted as the named respondent. *See also* Rule 2(a), Rules Gov'g § 2254 Cases.

aggravated robbery (in violation of Tenn. Code Ann. § 39-13-402), one count of aggravated burglary (in violation of Tenn. Code Ann. § 39-14-403), two counts of facilitation of aggravated rape (in violation of Tenn. Code Ann. §§ 39-11-403), and two counts of especially aggravated kidnapping (in violation of Tenn. Code Ann. § 39-13-305), for which he received an effective sentence of 52 years' incarceration, 42 of which are to be served at 100%. (Judgments, ECF No. 16-2, at 24–30.) The convictions and sentence were affirmed on direct appeal. *State v. Sandifer*, No. M2008-02849-CCA-R3-CD, 2010 WL 5343202 (Tenn. Ct. Crim. App. Dec. 21, 2010), *perm. app. denied* (Tenn. May 26, 2011). On February 1, 2012, the petitioner, through counsel, filed a petition for post-conviction relief in the state trial court. (ECF No. 16-28, at 59–64.) After conducting a hearing at which the petitioner and his trial attorney testified, the trial court entered an order denying the petition. (ECF No. 16-28, at 68–71.) That decision was affirmed as well. *Thorne v. State*, No. M2012-02518-CCA-R3-PC, 2013 WL 4647623 (Tenn. Ct. Crim. App. Aug. 26, 2013), *perm. app. denied* (Tenn. Dec. 11, 2013).

Thorne filed his § 2254 petition in this court on March 12, 2014. The respondent concedes that the petition is timely.

## II.   STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[2]

> In November 2006, R.N.[FN1] and A.B. were roommates living in a two bedroom apartment in which they also ran a recording studio. R.N.'s bed and belongings were located in one bedroom, and A.B.'s bed was located in the dining room. The recording studio was located in the second bedroom. In the early morning of November 7, 2006, R.N. and A.B. were at the apartment. R.N. received a telephone call from [Glenard] Cortez Thorne. Thorne wanted to come to R.N's apartment to pay for studio time he had previously used. Thorne and Tornita Crenshaw arrived at the apartment around 5:00 a.m. A.B. was sleeping in her bed in the dining room. Thorne, Crenshaw, and R.N. woke up A.B. She asked them to leave. Thorne and Crenshaw left. A.B. moved to R.N.'s bedroom and went back to sleep.

> FN1. In order to protect the privacy of the victims we have chosen to refer to them by their initials.

> Around 7:00 a.m., Thorne and Crenshaw returned. R.N. opened the door to let them into the apartment. As he was closing door, Lance Sandifer and Stephon Cunningham

---

[2] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

forced their way into the apartment. Sandifer and Cunningham were brandishing a shotgun and a pistol. R.N. was ordered to get the recording equipment unplugged so the four Appellants could take the equipment. A.B. awoke to the sound of fighting. She saw Thorne pointing a gun at R.N. Thorne then pointed the gun at A.B. and ordered her into the living room.

Sandifer was in the living room holding a shotgun. When A.B. came into the living room, Sandifer took her PDA. Sandifer ordered A.B. to sit on the couch. He told her to undress. When A.B. hesitated, Sandifer yelled, "Bitch, this isn't a game. I will shoot you. Take your clothes off." A.B. complied with the request and laid down on the couch. At this time, R.N. was sitting on the end of the couch with Thorne pointing a gun at him. Sandifer ordered R.N. to perform cunnilingus on A.B. R.N. attempted to pretend to perform cunnilingus. Sandifer realized that R.N. was pretending and ordered him to do it again. R.N. performed cunnilingus as Sandifer ordered. After a few minutes, Sandifer ordered R.N. to digitally penetrate A.B.'s vagina. R.N. complied. These acts were all completed at gunpoint. Thorne took R.N. into the studio to unhook the equipment.

Sandifer retrieved a mop from the kitchen. Sandifer inserted the mop handle into A.B.'s vagina and twisted it around for about five minutes. Sandifer ordered A.B. to turn over, and he attempted to insert the mop handle into her anus. A.B. estimated that the mop handle went into her anus a half inch to an inch. Sandifer was not satisfied with the depth the mop handle would go into A.B.'s anus. He ordered her to turn over and insert the mop handle into her vagina herself. At some point Sandifer digitally penetrated A.B.'s vagina and forced her to smell his fingers. He subsequently ordered her to masturbate by inserting her own fingers into her vagina. Sandifer asked if anyone had a condom, but Appellants all replied that they did not. Sandifer started to force A.B. to fellate him, but Thorne told Sandifer that they were in a hurry and needed to leave. Crenshaw allowed A.B. to get dressed in the bedroom.

Throughout the sexual assaults, Sandifer was brandishing a weapon, and Appellants were carrying recording equipment and various items out of the apartment. Appellants were trading the weapons back and forth amongst themselves. While she was being raped, A.B. stated that Crenshaw came into the room and said, "Damn, you guys have her naked." Crenshaw smirked as she spoke. Crenshaw also pointed a gun at A.B.'s head during the rapes and demanded R.N.'s car and alternatively A.B.'s car. A.B. stated that the three other Appellants were laughing and joking about her situation while they carried the recording equipment out to the cars in the parking lot.

When A.B. returned to the living room from changing her clothes, R.N. was tied to a chair. R.N. testified that Appellants tied him to the chair with electrical cord. Sandifer and Cunningham were beating R.N. Crenshaw forced A.B. to strike R.N.

Thorne asked A.B. if she wanted to leave with them. Because A.B. was fearful that Appellants would kill her if she stayed behind, she asked where they were going. Crenshaw, who was holding a gun at the time, stated that A.B. was coming with them. Cunningham and Crenshaw led A.B. to her own car and placed her in the backseat. When A.B. left the apartment with Cunningham and Crenshaw, R.N. was still tied to the chair. R.N. overheard Sandifer and Thorne arguing about whether to shoot him. R.N. was able to work his way out of the electrical cord and ran out of a back door in the apartment. Shortly thereafter, Thorne accidentally shot himself in the foot when he put the gun into the waistband of his pants. While Cunningham, Crenshaw, and A.B. were leaving the apartment, A.B. heard the gunshot and thought that Sandifer and Thorne had shot R.N.

R.N. ran to the neighboring apartments beating on doors and asking to use the telephone. Someone gave him a telephone, and he called the police. Shortly thereafter, R.N. saw Officer Kenneth Alexandrow in his patrol car, and R.N. flagged him down.

Officer Alexandrow investigated the apartment and saw that it had been ransacked. The condition of the apartment was consistent with R.N.'s description of events.

Detective David Achord was called to the scene. R.N. described the events that had transpired in great detail. He identified Thorne as one of the perpetrators. R.N. told Detective Achord that Crenshaw, Cunningham, Sandifer, and Thorne all handled the two weapons during the burglary and rapes. R.N. described the way Appellants would transfer the weapons among themselves. As part of his investigation, Detective Achord collected the mop handle and sent it for DNA testing. The TBI agent who tested the mop found A.B.'s DNA on the mop and concluded that the level of concentration of DNA was much greater than that of someone who had used the mop for cleaning.

Detective Achord obtained an arrest warrant for Thorne. He discovered that Thorne was at Meharry being treated for a gunshot wound. When Detective Achord arrived at Thorne's hospital room, he discovered Sandifer in the room. Sandifer was in possession of a PDA with the name "Lady Krush" on the screen. Detective Achord knew this to be A.B.'s nickname. Detective Achord seized the PDA. After finding a set of keys to a Lexus, he obtained a search warrant for the car.

After A.B. was taken to her car by Crenshaw and Cunningham, Sandifer and Thorne came to the parking lot and got into another car, a black Lexus. Sandifer and Thorne followed Cunningham, Crenshaw, and A.B. to Cunningham's aunt's house. When they arrived at the house, Cunningham's aunt, Denise King, looked at Thorne's injury and told him he needed to go to the hospital. She agreed to drive him to Meharry. Sandifer rode with them to the hospital. Cunningham, Crenshaw, and A.B. followed in A.B.'s car. Sandifer stayed at the hospital with Thorne. Cunningham and Crenshaw drove around with A.B. still in the backseat. They stopped for food. At some point, they returned to the hospital and Sandifer got into the car. Sandifer told A.B. that if he had had a condom, he would have raped her. A.B. asked Crenshaw and Cunningham to let her go. They told her that they would let her go later. Cunningham and Crenshaw drove to Cunningham's mother's house. They told A.B. to act like she was Crenshaw's sister. Cunningham and Crenshaw went upstairs and left A.B. downstairs with Cunningham's mother and her children.

When she returned downstairs, Crenshaw told A.B. that she wanted to go see another boyfriend and told A.B. they were going to go to the store for some tampons. A.B. and Crenshaw left in A.B.'s car. Crenshaw and the other boyfriend stood next to the car while A.B. remained inside. A.B. was planning to leave in the car if Crenshaw left the keys, but Crenshaw took the keys with her. Crenshaw and the boyfriend had an argument, and Crenshaw drove A.B. back to Cunningham's mother's house.

Crenshaw and Cunningham put A.B. back into the car. They began driving around town. At some point, R.N. called A.B.'s cellphone pretending to be Thorne in an attempt to lure them to the hospital. Crenshaw, who had A.B.'s phone at the time, answered and immediately recognized R.N.'s voice. Crenshaw told A.B., "[R.N.] done fucked you up 'cause I was gonna take you home, but now, you have to stay with us cause he's got the police up there." Cunningham was driving A.B.'s car at this point, and Crenshaw demanded that he pull the car over. When he complied, Crenshaw engaged the child locks on the rear doors of the car so that A.B. could not escape.

Crenshaw and Cunningham decided they wanted to go to a hotel room. Before doing so, they picked up Kendre Howard and Tracy Phillips. When Howard got into the car, he said he was "strapped." A.B. understood this to mean that Howard was carrying a weapon. She believed that Crenshaw and Cunningham might have picked Howard up so that Howard could kill her.

When they arrived at the hotel, A.B. was forced to go to the front desk and pay for a hotel room with her credit card. While in the hotel room, Howard asked A.B. to fellate him. She refused. Howard did not force her and let the matter drop. A chair in the hotel room was placed in front of the door, and someone sat in the chair the entire night. A.B. was on a bed with Howard and tried to stay awake.

The next morning, Crenshaw, Cunningham, Howard, and Phillips took A.B. to the mall. While there, they demanded that A.B. give them her ATM card and her PIN number. Howard and Phillips withdrew money from A.B.'s account using her ATM card. Crenshaw took some of the money and forced A.B. to accompany her while she got her nails done. The other individuals took the money and bought clothes. While at the mall, A.B. saw a security guard. However, she was afraid to approach him because she did not know what Crenshaw, Cunningham, Howard and Phillips were willing to do to keep her quiet.

After leaving the mall, they returned to Cunningham's mother's house. When they arrived, A.B. pleaded to be let go. She had been pleading with them throughout the time she was with them. Crenshaw had been telling her maybe later. At this point, they were discussing letting her go but were concerned that she would call the police. She promised not to call. Cunningham relented and agreed to let her go. A.B. caused a scene outside the house in order to get her cellphone back from them. They returned her cellphone, and she left in her car. Once she was in the car, she called her best friend and her parents. She agreed to meet them at a Mapco near her apartment. Her parents called the police. Detective Achord was notified, and he met A.B. at the Mapco.

A.B. described the events to Detective Achord. She agreed to submit to an examination to compile a rape kit. A.B. forgot to tell the nurse that Sandifer placed the mop in her anus, so the nurse did not examine that area of A.B.'s body. The tests run on the rape kit materials did not reveal any pertinent evidence.

A.B. called Detective Achord several days later to tell him that Crenshaw and Cunningham were calling her, texting her and leaving threatening voice mail messages. A.B. also informed Detective Achord that Crenshaw and Cunningham had taken a photograph of themselves with her cellphone during the time they held her captive. On November 17, 2006, Crenshaw and Cunningham were located in a hotel room in Nashville.

*Sandifer*, 2010 WL 5343202, at *2–5.

## III.  ISSUES PRESENTED FOR REVIEW

From Thorne's actual petition (ECF No. 1) and from his lengthy and repetitive Statement of Facts in Support of Petition for Writ of Habeas Corpus (ECF No. 4), the court gleans the following claims for relief (many of which are not addressed by the respondent):

(1) that the evidence was insufficient to sustain the convictions for (a) especially aggravated kidnapping and (b) facilitation of aggravated rape (ECF No. 1, at 10);

(2) that the trial court erred in not considering mitigating factors at sentencing (*id.* at 10–11);

(3) that the court violated Thorne's 6th Amendment right to a jury in imposing consecutive sentences (*id.* at 13–14);

(4) that the trial court violated Thorne's constitutional right to a fair trial in failing to sever Thorne's trial from that of his co-defendants (*id.* at 16);

(5) that trial counsel was constitutionally ineffective in that she failed to

(a) discuss with Thorne the benefits and consequences of testifying at trial (ECF No. 4, at 10);

(b) investigate, prepare or speak to witnesses (ECF No. 1, at 19; ECF No. 4, at 9);

(c) engage an expert to evaluate Thorne's mental health (ECF No. 1, at 20; ECF No. 4, at 9);

(d) prepare for trial, learn or investigate "legitimate justiciable defenses" (ECF No. 1, at 20);

(e) object to the prosecutor's improper leading of witnesses and engaging in other improper questioning (*id.*);

(f) raise any argument or defenses (*id.*);

(g) conduct discovery (*id.*);

(h) impeach key state witnesses based on false or inconsistent testimony (*id.* at 20–21);

(i) refute testimony that Thorne ever held a gun during the robbery or laughed during the sexual assault (*id.* at 21);

(j) show the layout of the apartment in order to refute the kidnapping charges (*id.* at 22);

(k) contest the sentencing enhancement factors (*id.*);

(l) raise an argument in front of the jury about how the evidence was insufficient to support the rape and kidnapping charges (*id.* at 22–23);

(m) raise double jeopardy as a defense (*id.* at 34);

(n) raise intoxication as a defense (*id.*);

(o) raise duress as a defense (*id.*);

(p) request a jury instruction on the "natural probable consequences rule" (*id.*; ECF No. 4, at 9);

(q) request that the jurors determine whether the state proved beyond a reasonable doubt each element of the offense of especially aggravated kidnapping (ECF No. 1, at 34);

(r) present background information and call friends and family members as witnesses to introduce mitigation evidence at sentencing (ECF No. 4, at 9);

(s) interview the state's key witnesses for potential defense theory (*id.*);

(t) request jury instructions (*id.*);

(u) challenge erroneous jury instructions (*id.*);

(v) challenge the excessive sentence on the basis of abuse of the enhancement factors in the motion for a new trial (*id.*); and

(w) "properly go over Petitioner['s] rights, or explain he has a decision regarding representation" (*id.*);

(6) that appellate counsel was constitutionally ineffective for failing to press a claim that the evidence was insufficient to support the rape and kidnapping charges (*id.* at 22–23); to raise an argument about the "natural probable consequences rule" in the direct appeal (ECF No. 4, at 9); to argue that the especially aggravated kidnapping charge violated due process (*id.*); and to challenge the sentence as excessive (*id.*);

(7) that the trial court provided erroneous definitions of the terms "knowingly" and "substantial interference" in the jury instructions, and also erroneously defined aggravated rape to include a *mens rea* of recklessly (ECF No. 4, at 34);

(8) that the trial court erred in denying Thorne's motion *in limine* (ECF No. 1, at 24);

(9) that trial court erred in denying the petitioner's motion to require the state to elect the facts upon which it was relying to support the two counts of especially aggravated kidnapping (*id.* at 25);

(10) that the trial court erred under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), by enhancing Thorne's sentence and imposing consecutive sentences on the basis of facts not charged in the indictment and found by a jury (*id.* at 13; ECF No. 4, at 7, 44–46);

(11) that the petitioner received ineffective assistance from his post-conviction counsel (ECF No. 1, at 34); and

(12) that the post-conviction court committed constitutional error in denying the petitioner's claims for post-conviction relief (ECF No. 4, at 7.)

## IV.    STANDARD OF REVIEW

### A.    Exhaustion and Procedural Default

A federal district court will not entertain a petition for the writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine designed to promote comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A]

federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[3] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

---

[3] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

**B.      Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this court's review of the state court's resolution of those issues remains quite limited. First, this court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Further, under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially

> indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the claims raised in Thorne's petition for habeas relief.

## V. DISCUSSION

### A. Subclaim 1(a) – *Sufficiency of the Evidence to Sustain the Convictions for Especially Aggravated Kidnapping*

Although the petitioner frames this claim as a challenge to the sufficiency of the evidence to sustain his convictions for especially aggravated kidnapping, he also argues in support of this claim that the kidnapping convictions violated his right to due process, because any movement or confinement of the victims was essentially incidental to the accompanying robbery and not sufficiently significant in and of itself to warrant independent prosecution. (ECF No. 1, at 7; ECF No. 4, at 24–33.) More specifically, the petitioner asserts that there was "controversial testimony from the state's witnesses" as to the kidnapping charge (ECF No. 1, at 7) and that any confinement or movement of R.N. and A.B.[4] inside the apartment was essentially incidental to the aggravated robbery. He also asserts that his participation in

---

[4] This court, like the state appellate court, will refer to the victims by their initials only.

the criminal episode ended once he was shot just before leaving the apartment (ECF No. 4, at 31), such

that he could not be criminally responsible for the kidnapping of A.B.[5]

Similarly, the petitioner asserted a claim on direct appeal that the evidence was insufficient to

substantiate the convictions for especially aggravated kidnapping, arguing as follows:

> When an accused challenges the sufficiency of the convicting evidence, the reviewing court must review the record to determine if the evidence at trial was sufficient "to support the findings by the trier of fact of guilty beyond a reasonable doubt." Tenn. R. App. Proc. 13(e). . . . Appellant maintains that no rational jury could have found him guilty beyond a reasonable doubt on the facts presented at trial. . . .
>
> . . . .
>
> [I]n order for the jury to return a verdict of guilt for especially aggravated kidnapping, the trier of fact must believe beyond a reasonable doubt that Mr. Thorne knowingly removed or confined [R.N.] and [A.B.] so as to interfere substantially with [their] liberty; **and** that the confinement or removal was accomplished with a deadly weapon. The issue of merger and election of offenses was raised during Mr. Thorne's Motion for Judgment of Acquittal. The Court indicated that it was not proper to raise the merger issue during the Motion for Judgment of Acquittal and did not address whether or not the State should be required to elect offenses. (Tr. Trans. X, p. 599–605). The issue of merger was also raised at sentencing but again, the Court did not address the issue. (Tr. Trans. XV, p. 139)
>
> The evidence establishes that any movement of [R.N.] and [A.B.] while in the apartment was necessary to consummate the aggravated burglary and aggravated robbery. The evidence established that [R.N.] was moved to assist in unhooking the studio equipment after Mr. Thorne was unable to figure out how to unhook the equipment. [A.B.] was moved from the bedroom to the living room while items from the bedroom were being packed and taken during the robbery.
>
> Even if the trier of fact believes there was additional movement beyond that necessary to accomplish the robbery, the movement did not a) prevent either victim from summoning help, b) lessen Mr. Thorne's risk of detection, or c) create a significant danger or increase the victims' risk of harm. The Court indicated on the record that Mr. Thorne's participation ended once he was shot in the foot; therefore, the only facts that should have been considered in convicting Mr. Thorne of two counts of especially aggravated kidnapping are those events that occurred while inside the victims' apartment and those events incidental to the robbery, not a separate offense, and thus, violates due process and Appellant's right not to be placed twice in jeopardy, as guaranteed under the Fifth Amendment to the United States Constitution . . . .

(Thorne Dir. Appeal Br. at 61–64, ECF No. 16-23 at 69–72).

---

[5] Thorne asserts that the trial court found on the record that Thorne's participation ended once he was shot, citing the sentencing order in his underlying criminal case. (ECF No. 4, at 31.) In fact, the trial court referred to this incident only in a footnote stating, "Defendant Thorne and defendant Sandifer went to the hospital to receive treatment for Thorne's gunshot wound which occurred during the initial events at the victim's apartment. (Thorne Sentencing Order at 2, ECF No. 16-2, at 20.) The court did not make an express finding in Thorne's or any of his co-defendants' sentencing orders that Thorne's participation ended with his being shot.

In reviewing the sufficiency-of-the-evidence claim, the appellate court found that Thorne and the other appellants "failed to present a separate argument as to how the evidence was insufficient and in what way the State failed to prove the statutory elements necessary to support their convictions for especially aggravated kidnapping" as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. The court therefore found under Rule 10(b) of the Rules of the Tennessee Court of Criminal Appeals that the sufficiency arguments were waived. *State v. Sandifer*, 2010 WL 5343202, at *10.

The court also, however, interpreted the claim as raising a due-process argument that the especially aggravated kidnapping convictions should be merged into the robbery convictions under *State v. Anthony*, 817 S.W.2d 229 (Tenn. 1991). The court therefore proceeded to consider the due-process claim independently in a different section of the opinion. Under the heading "Failure to Merge Counts 11 and 12 with Counts 1 and 2,"[6] the court ruled, in pertinent part, as follows:

> Appellants Sandifer and Thorne argue that the trial court erred in failing to merge Counts 11 and 12 for the especially aggravated kidnapping of R.N. and the especially aggravated kidnapping of A.B. with Counts 1 and 2 for the aggravated robbery of R.N. and the aggravated robbery of A.B. . . . They argue that the restraint of the victims was not beyond that necessary to complete the robberies and, therefore, their rights to due process have been violated as stated in *Anthony*.

> In *Anthony*, our supreme court addressed the issue of whether dual convictions for armed robbery and aggravated kidnapping violated the due process guarantees of . . . the Tennessee Constitution. The court concluded that when a confinement, movement, or detention is "essentially incidental" to an accompanying felony, such as robbery or rape, it is not sufficient to support a separate conviction for kidnapping. The court warned that the kidnapping statute should be narrowly construed so as to make its reach fundamentally fair and to protect the due process rights of every citizen. . . . In other words, before a defendant may be convicted of a kidnapping charge, the trial court must determine whether the confinement, movement, or detention [involved in the individual's case] is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction. [O]ne method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the [attending] crime . . . itself.

> In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), the supreme court further refined the approach to be taken when analyzing these issues. The reviewing court must ascertain whether the movement or confinement was beyond that necessary to consummate the act of the accompanying offense. If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. The *Dixon* court clearly stated that the intent is not to

---

[6] Counts 1 and 2 charged the defendants, including Thorne, with especially aggravated robbery of R.N. and A.B., respectively. Counts 11 and 12 charged the defendants with especially aggravated kidnapping of R.N. and A.B., respectively. (*See* Indictment, ECF No. 16-1, at 6–21.)

provide a defendant with a free kidnapping merely because he [or she] also committed the primary offense, but rather merely to prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of the accompanying crime.

. . . .

### Appellants Sandifer, Thorne, and Cunningham—Counts 11 & 1

The evidence at trial showed that after the rapes of R.N. and A.B. and the majority of the victim's belongings had been taken out of the apartment, A.B. was taken to a bedroom to change clothes. When she returned, R.N. was tied to a chair by electrical cord. A.B. witnessed Appellants Sandifer, Cunningham, and Crenshaw beating R.N. Appellant Crenshaw also forced A.B. to strike R.N. R.N. overheard Appellants Sandifer and Thorne arguing about whether to kill him before they left the apartment. R.N. was able to work his way out of the restraints and escaped out the back door of the apartment.

As stated above, the initial question in this scenario is whether the confinement was beyond that necessary to consummate the aggravated robbery of R.N. At the point R.N. was restrained, he had already been forced to unhook the recording equipment and the majority of the equipment had already been removed from the apartment. He was restrained as Appellants were preparing to leave. We conclude that the aggravated robbery was at least substantially completed if not totally completed. It appears that the primary reason for restraining R.N. was to beat him. Therefore, the confinement was beyond that necessary to complete the aggravated robbery.

We now turn to the second part of the test, whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. The victim's restraint prevented his summoning help. If he had not been able to escape his restraints, he would not have been able to run to his neighbors. The victim's restraint also created an increased risk of harm. After tying up the victim, Appellants were beating him. R.N. testified that the beating was so severe he passed out. In addition, Appellants Sandifer and Thorne were also considering killing R.N. while he was restrained. R.N. escaped this fate by getting out of his restraints. For these reasons, we conclude that the facts with regard to R.N. meet the two-part test set out in *Dixon.* Therefore, we find no violation of the due process rights of Appellants Sandifer, Thorne, and Cunningham as a result of the trial court's failure to merge Count 11 into Count 1.

### Appellants Sandifer and Thorne—Counts 12 and 2 . . .

. . . .

The evidence at trial showed that after the rapes were completed and the majority of A.B.'s belongings had been removed from the apartment, Appellant Crenshaw took A.B. to get dressed. When Appellant Crenshaw and A.B. returned from the bedroom, Appellant Crenshaw, who was holding a gun, stated that A.B. was coming with them. They got into A.B.'s car with Appellant Cunningham. Appellants Sandifer and Thorne followed them in another car. A.B. was taken to a house where all four appellants were present with her in the house. Appellant Thorne was taken to the hospital to have his foot examined. After Appellant Thorne was taken to the hospital, Appellants Crenshaw and Cunningham picked up Appellant Sandifer. Appellant Sandifer got into the car with A.B. and told her that if he had had a condom he would have raped her.

As we concluded above, at the time A.B. was taken from the apartment, the rapes had been completed and the robbery was at least substantially complete if not

totally complete. Therefore, we find no violation of Appellants' right to due process as a result of the trial court's failure to merge Count 12 into Count 2 for Appellant Cunningham [sic[7]].

*Sandifer*, 2010 WL 5343202, at *13–15.

In his response to Thorne's claim in this court that the evidence was insufficient to support the convictions for especially aggravated kidnapping, the respondent notes only that the claim is procedurally defaulted because "the state court rejected the claim by invoking a regularly enforced state law procedural bar—waiver." (ECF No. 14, at 23.) The respondent, however, utterly failed to address the federal standards pertaining to waiver[8] and also failed to construe the petitioner's claim liberally as a due-process claim mirroring that of his counsel in his direct appeal. The court finds the response to be unacceptably terse, and the court will proceed with a consideration of the merits of the claim as a due-process claim, which effectively incorporates a sufficiency-of-the-evidence claim under the circumstances presented here.

### (1)    The Due-Process Claim As It Relates to the Conviction for Kidnapping R.N.

As the Tennessee Court of Criminal Appeals recognized, under the law in effect in Tennessee at the time of the petitioner's conviction, the question of whether a separate kidnapping conviction violates due process was a question of law determined initially by a trial court, which determination was then reviewed *de novo* by the Tennessee Court of Criminal Appeals. Resolution of the question required application of a two-part test that asked: (1) whether the movement or confinement of the victim was beyond that necessary to consummate the accompanying crime; and (2) whether the additional movement or confinement prevented the victim from summoning help, lessened the defendant's risk of

---

[7] It appears from the context that the court intended to refer to defendant Thorne, since defendant Cunningham did not raise a merger argument regarding Counts 2 and 12.

[8] The procedural default doctrine, discussed above, will bar review of a federal claim that the state court declined to address on the basis that the petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In such a case, "the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The Sixth Circuit has established a four-pronged analysis to determine whether a claim has been procedurally defaulted for failure to comply with a state procedural requirement, pursuant to which a reviewing court must decide: (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state court actually enforced the state procedural sanction; (3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and (4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). The respondent did not address any of these factors.

detection, or created a significant danger or increased the victim's risk of harm. *State v. Richardson*, 251 S.W.3d 438, 442–43 (Tenn. 2008) (citing *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997)).[9] When each factor is met, a separate kidnapping conviction is permitted.

Although the Tennessee courts referenced only the Tennessee constitution's due-process guarantee contained in Article I, Section 8, Thorne's counsel referenced the federal constitutional due-process guarantee as well, as does Thorne himself in his habeas petition. The scope of Tennessee's due-process guarantee has generally been construed to be coextensive with that of the federal constitution. *See, e.g.*, *Gallaher v. Elam*, 104 S.W.3d 455, 463 (Tenn. 2003) ("We have held that [Article I, Section 8] of the Tennessee Constitution is synonymous with the due process clause of the Fourteenth Amendment to the United States Constitution." (citing *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997))). The court finds that the claim is cognizable on habeas review insofar as it alleges a due-process violation.

The petitioner here argues that R.N. was confined only long enough to consummate the robbery. In considering this argument in the direct appeal, the court of criminal appeals found as a factual matter that "the aggravated robbery was at least substantially completed if not totally completed" by the time the defendants confined R.N. to a chair, that "the primary reason for restraining R.N. was to beat him," *Sandifer*, 2010 WL 5343202, at *14, and, therefore, that the confinement was beyond that necessary to complete the aggravated robbery. The court further found that the additional confinement had the effect of preventing, or attempting to prevent, R.N. from summoning help, lessening the defendants' risk of detection, and creating a significant increased risk of harm to R.N. The court therefore held that the separate conviction for kidnapping R.N. did not violate due process and, implicitly, that the evidence of record was sufficient to support the conviction.

---

[9] As discussed in section V.F(2)(b) of this memorandum, *infra*, in *State v. White*, 362 S.W.3d 559, 577–78 (Tenn. 2012), the Tennessee Supreme Court overruled *Richardson* and *Dixon* and held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law," and that "[t]he separate due process test articulated first in *Anthony* [*v. State*, 817 S.W.2d 299 (Tenn. 1991)], and subsequently refined in *Dixon* and its progeny, is, therefore, no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." However, to the extent that Thorne's habeas petition could be construed to include a free-standing claim that the kidnapping convictions violated due process under *White*, on the basis that the jury in his criminal case did not determine these elements, such claim is procedurally defaulted because it was not raised in Thorne's direct appeal.

This court finds that the state court's factual conclusion was clearly supported by the trial testimony of R.N. and A.B., both of whom testified that Thorne was present while R.N. was tied to the chair and while he was being beaten, even if he did not personally participate in the acts of confining or beating R.N. The Tennessee appellate court's finding that the petitioner's conviction for the aggravated kidnapping of R.N. did not violate his right to due process was not contrary to and did not involve an unreasonable application of clearly established federal law, and it did not rest on an unreasonable finding of fact in light of the evidence. Moreover, the finding that the conviction comported with due process necessarily incorporated a determination that the evidence was sufficient to support the conviction.

This court finds that the petitioner is not entitled to relief on the basis of this claim. Nonetheless, because this claim presents a close call in an evolving area of the law and because "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claim[]," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the court will grant a certificate of appealability as to this subclaim.

### *(2)     The Due-Process Claim As It Relates to the Conviction for Kidnapping A.B.*

Regarding A.B., the petitioner argues here and argued in the state court that he did not participate in any events that occurred after he shot himself in the foot, so he could not have been involved in the removal of A.B. from the apartment or her confinement thereafter. He insists that any restraint of her while she was still inside the apartment was incidental to the robbery and rape. The trial court did not address these claims at sentencing or otherwise. (*See* Thorne Sentencing Order, ECF No. 16-2, at 19–23.) The appellate court effectively elided over them as well, but nonetheless noted that all four of the defendants were present in the house to which A.B. was taken after being removed from her apartment. The court did not address the fact that Thorne had, by that time, been shot and was focused on the question of whether he needed to seek medical attention.

However, the record also reflects that A.B. testified that, after defendant Lance Sandifer demanded that A.B. perform oral sex on him, Thorne told him "they were in a hurry and needed to get out." (Trial Tr. 170, ECF No. 16-6, at 69.) Shortly thereafter, Tornita Crenshaw determined that the defendants would need to "borrow" A.B.'s car because the defendants' get-away car had left. (*Id.* at 173, ECF No. 16-6, at 72.) Crenshaw took A.B. to her room to get dressed. At the time they went into A.B.'s room, R.N. was still engaged in helping the defendants pack up equipment from the other

bedroom/studio. When A.B. returned to the living room, she saw that R.N. was tied to a chair and was being beaten by Sandifer and Cunningham. Thorne and Crenshaw directed A.B. to help them carry merchandise to A.B.'s car. They walked to the car and then back inside. At that point, R.N. appeared to A.B. to be unconscious. A.B. walked back to the car with the other defendants except Thorne, carrying more equipment. When they heard a shotgun blast from the parking lot, A.B. and the defendants who were also carrying equipment to the car all ran back toward the apartment. When they got back inside the apartment, A.B. saw that R.N. was still tied to the chair and still unconscious, but that there was a bullet hole in Thorne's boot. A.B. stated: "At that point, Stephon [Cunningham] and Toya [Crenshaw] put me in the back seat of my car. Stephon takes my keys and we drive off. Lance and Cortez [Thorne] are still behind." (*Id.* at 175, ECF No. 16-6, at 74.)

That testimony, standing alone, would not support a conclusion that Thorne was involved in the decision to take A.B. with the defendants when they left. However, under cross-examination, A.B. stated that Thorne initially said to the others, "We're gonna take her with us," and then asked her if she wanted to go with the defendants. (*Id.* at 369, ECF No. 16-8, at 49.) A.B. stated during her direct examination she was terrified and afraid to respond either yes or no, so she asked, "Where are you going?" Thorne ignored her question and walked away. According to A.B., Crenshaw, who "still has the hand pistol at this point[,] says, 'No, we're taking her with us.' And, she grabs me by the arm and we walk out of the apartment." (*Id.* at 177, ECF No. 16-6, at 76.)

Based in this testimony, the jury could reasonably have inferred that Thorne was involved or complicit in the decision to take A.B. with the defendants when they left, regardless of whether he had no further involvement after he shot himself in the foot. Further, the evidence developed at trial fully supports the factual conclusion that A.B.'s removal from the apartment at gunpoint was not "essentially incidental" to the robbery.

Although A.B.'s testimony is somewhat inconsistent, the court nonetheless finds that it was sufficient to establish that Thorne was aware even before being shot that A.B. was being taken against her will and that he was complicit in the decision to remove her from the apartment. The evidence is certainly not strong, and this court is troubled by the fact that Thorne, though he was clearly less culpable than Cunningham or Crenshaw in the kidnapping of A.B., nonetheless received a longer sentence than

either of those defendants on the charge of kidnapping A.B.[10] Nonetheless, this court cannot find that the conviction of especially aggravated kidnapping of A.B. violated due process or that it was unsupported by sufficient evidence.

Although the court finds that the petitioner is not entitled to relief on the basis of this claim, this claim, like that associated with the conviction for kidnapping R.N., presents a close call in an evolving area of the law. Because "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claim[]," *Miller-El*, 537 U.S. at 327, the court will grant a certificate of appealability as to this subclaim.

**B.      Subclaim 1(b) – Sufficiency of the Evidence to Sustain the Convictions for Facilitation of Especially Aggravated Rape**

The petitioner also asserts that the evidence was not sufficient to sustain the convictions for facilitation of especially aggravated rape. He specifically argues that the evidence is insufficient because it failed to establish that he knew that defendant Sandifer intended to commit rape. He raised this claim on direct appeal as well, and the respondent concedes that the claim is exhausted.

A claim of ineffective assistance of counsel requires the reviewing court to ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review recognizes that the trier of fact has the responsibility "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*; *see also Cavazos v. Smith*, 565 U.S. ----, 132 S. Ct. 2, 3–4 (2011) (per curiam) ("*Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

Moreover, because this is a habeas proceeding, the court does not undertake a *de novo* review of the application of the governing standard. Rather, the court must "review [the state court's] sufficiency-

---

[10] Thorne was sentenced to 21 years for the especially aggravated kidnapping of A.B. (Thorne Sentencing Order, R. at 172, ECF No. 16-2, at 22.) Crenshaw received a 16-year sentence for the especially aggravated kidnapping of A.B. (Crenshaw Sentencing Order, R. at 148, ECF No. 16-1, at 102.) Cunningham was sentenced to 18 years for his part in the especially aggravated kidnapping of A.B. (Cunningham Sentencing Order (R. 158), ECF No. 16-2, at 8.) However, both these defendants were also juveniles at the time of the offenses. (Crenshaw Sentencing Order (R. 146), ECF No. 16-1, at 100 n.3; Cunningham Sentencing Order (R. 156), ECF No. 16-2, at 6 n.3.)

of-the-evidence decision under the highly deferential standard of AEDPA." *Pinchon v. Myers*, 615 F.3d 631, 643–44 (6th Cir. 2010). *See also Getsy v. Mitchell*, 495 F.3d 295, 315–16 (6th Cir. 2007) (en banc) ("Whether [the petitioner] is entitled to habeas relief ultimately depends on whether the [state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.").

The Tennessee Court of Criminal Appeals found the claim presented in that court to be without merit, as follows:

> Appellants Cunningham and Thorne both argue that the evidence was insufficient to support their convictions of facilitation of aggravated rape. Both Appellants argue that they cannot be guilty of this offense because they did not know that Appellant Sandifer intended to rape the victims. Appellants were charged pursuant to Tennessee Code Annotated section 39-11-403(a) which states, "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a).

> Appellants are correct in their assertion that there was no evidence presented that they knew of any intent Appellant Sandifer had to rape the victims before entering the apartment. However, knowing his intent before the crime began is not required. In *State v. Grills*, 114 S.W.3d 548 (Tenn. Crim. App. 2001), *perm. app. denied*, (Tenn. 2002), the defendant was convicted of facilitation of felony rape of a child less than 13 years of age. On appeal, she argued that the evidence was insufficient to support her conviction. The evidence presented at trial showed that while her adult boyfriend was raping her son, the defendant walked into the victim's room and walked out and shut the door. This Court held that this was sufficient evidence to meet the elements of Tennessee Code Annotated section 39-11-403(a).

> The evidence when taken in a light more favorable to the State demonstrates that both Appellants were present in the apartment when Appellant Sandifer ordered A.B. to get undressed. In addition, there was specific testimony that Appellant Thorne was holding a gun to R.N. while R.N. was sitting on the couch immediately before R.N. was forced to penetrate A.B.'s vagina with his tongue. The evidence also showed that Cunningham and Thorne were present throughout the rapes. A.B. heard them laugh and joke about the incidents. Based on this evidence, a rational trier of fact could conclude that Appellants Thorne and Cunningham knew Appellant Sandifer intended to rape A.B. when he ordered her to disrobe. They definitely knew that he intended to rape both victims when he ordered R.N. to perform cunnilingus on A.B. As in *Grills*, Appellants were present when the rapes occurred and did nothing to prevent them. A rational trier of fact could have also found that they provided substantial assistance by Appellant Thorne's holding the gun to R.N. while he performed cunnilingus and the fact that both Appellants were walking through the room and passing the guns to each other throughout the episode.

> Therefore, we conclude that the evidence was sufficient to support their convictions of facilitation of aggravated rape.

*Sandifer*, 2010 WL 5343202, at *12 (some internal citations omitted).

The state court's rejection of this claim was not contrary to and did not involve an unreasonable application of clearly established federal law, and it did not rest on an unreasonable finding of fact in light of the evidence. Although the state court did not cite the relevant Supreme Court decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), it nonetheless applied the correct federal standard and reasonably determined that a rational trier of fact could have found all the elements of facilitation of especially aggravated rape were met. Despite Thorne's arguments to the contrary, it is apparent under state law that proof of the crime did not require proof that he knew in advance that Sandifer intended to commit rape. And despite Thorne's assertion that he knew nothing about the rapes while they were occurring, the testimony presented by both A.B. and R.N., which the jury obviously credited, was sufficient to establish that Thorne was present during at least some portions of the assaults and knew that they were taking place while they were taking place. The petitioner has failed to demonstrate that he is entitled to relief on the basis of this claim.

### C.       Claim 2 – Mitigating Factors at Sentencing

The petitioner argues that the trial court erred in not considering mitigating factors at sentencing, including: (a) that the victim was released alive; (b) that the petitioner was suffering from a mental or physical condition that significantly reduced his culpability for the offenses; (c) that the petitioner acted under "strong provocation," in that he was provoked by the victim, who the petitioner thought had "set him up" (ECF No. 1, at 10 & 11); (d) that "substantial grounds exist tending to excuse or justify the defendant[']s criminal conduct, though failing to establish a defense" (*id.* at 11); and (e) that the defendant acted under duress or the domination of another person (*id.*).

Of these subclaims, only 2(b) was presented to the Tennessee Court of Criminal Appeals, under any theory, on direct appeal. Even this subclaim, however, was not presented as an error of constitutional dimension. Instead, Thorne argued that the trial court erred as matter of state law by failing to consider any of the mitigating factors enumerated in Tenn. Code Ann. § 40-35-113. (*See* Thorne Dir. App. Br. at 60, ECF No. 16-23, at 68.)

As previously discussed, a petition for federal habeas corpus relief may only be granted when it is found that a person is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). "A federal court may not issue the writ on the basis of a perceived error of state law."

*Pulley v. Harris*, 465 U.S. 37, 41 (1984). Because federal habeas corpus relief is only available to remedy errors of a federal nature, a claim that a conviction is the result of a state court's misapplication of state sentencing law is not cognizable unless the petitioner can establish that such error amounts to a fundamental miscarriage of justice or a violation of the petitioner's constitutional right to due process. *Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998); *see also Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." (citations omitted)).

Here, the petitioner essentially argues that the trial court did not give the petitioner's mitigating factors sufficient weight at sentencing. However, in neither his state appeal nor his federal habeas petition did he cite to any provision of the United States Constitution or argue that his sentence amounted to a fundamental miscarriage of justice or was imposed in violation of his right to due process. Nor did the petitioner cite to any case law employing constitutional analysis. *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (a petitioner is deemed to have raised a federal constitutional claim by relying on federal cases employing constitutional analysis, relying on state cases employing constitutional analysis, phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific right, or alleging facts well within the mainstream of constitutional law) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). Because this court must accept as valid a state court's interpretation of the statutes and rules of practice of that state, *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), the petitioner fails to state a claim upon which federal habeas corpus relief can be granted.

The other subclaims under this heading likewise fail to state a claim of constitutional dimension. Even if they did, they are procedurally defaulted and barred from review because the petitioner failed to present them, under any theory, to the Tennessee Court of Criminal Appeals in his direct appeal. The petitioner has not attempted to excuse the default by presenting cause for the failure to raise the claims or actual prejudice resulting from the alleged errors.

The petitioner is not entitled to relief on the basis of any of the subclaims included in Ground Two of the habeas petition.[11]

---

[11] Specifically regarding the petitioner's claim that the trial court erred in failing to consider duress as a mitigating factor at sentencing, the court observes that, even now, though the petitioner alleges that he acted under duress and that he was shot by one of the other defendants, he does not state by whom

### D.    Claim 3 – Consecutive Sentencing

Thorne argues that the state court violated his Sixth Amendment right to a jury in imposing consecutive sentences, because the decision to impose consecutive sentences was based on facts not charged in the indictment or presented to the jury. This claim was raised in the state appeal as a federal constitutional issue. The Tennessee Court of Criminal Appeals dispensed with the claim summarily, stating: "[B]ecause we have found . . . support for the imposition of consecutive sentences in our own review of the record, we need not address this issue." *Sandifer*, 2010 WL 5343202, at *25.

The United States Supreme Court has determined that consecutive sentencing decisions do not implicate Sixth Amendment concerns and do not require supporting facts to be determined by a jury. *Oregon v. Ice*, 555 U.S. 160, 164 (2009). The petitioner is not entitled to relief on the basis of this claim.

### E.    Claim 4 – Failure to Sever Thorne's Trial from Co-Defendants' Trial

Thorne asserts a claim based on the trial court's refusal to grant his motion for a severance. He argues that, as a result of being tried jointly with his co-defendants, the jury heard "testimony that was highly prejudicial" to him (ECF No. 1, at 16), and that "[m]utually antagonistic defenses mandate a severance especially when it [is] established a joint trial will result in compelling prejudice against which the trial court cannot protect so that a fair trial cannot be had." (*Id.*) Thorne insists that his right to a fair trial is protected by the Sixth Amendment and, by extension, that the denial of his motion to sever violated his rights under the Sixth Amendment.

In his direct appeal, however, Thorne argued only that the trial court erred in denying his motion for a severance because his right to a fair trial outweighed society's interest in promoting joint trials for reasons of judicial economy. The issue was not articulated or formulated as a federal constitutional claim, and the law upon which Thorne relied in support of this claim on appeal did not itself refer to or rely upon

---

or allege specific facts supporting his vague allegations of duress. Likewise, at his post-conviction hearing, he implied that he acted under duress but failed to allege concrete facts in support of that allegation. (*See* Post-Conviction Hr'g Tr. at 24–25, ECF No. 16-29, at 25–26 (when asked to explain what he meant by asserting that he had acted under duress, the petitioner stated: "I don't know who shot me, that's what I'm saying. I ain't going to be like, oh, dude shot me and deal with being a rat or deal with being a police [sic]. I didn't tell the police nothing. See, all them gave the police statements and that's what came out, that I shot myself. But I actually didn't though. . . . [H]ow they know I wasn't under gunpoint when I left, and was forced to leave, or none of that. How they know I wasn't forced to drive and follow the individuals that was in the other car or anything like that[?].").)

the United States Constitution.[12]  The court therefore finds that the petitioner did not fairly present this claim as a federal claim to the highest available state court. The petitioner's claim that the denial of his motion to sever violated his federal constitutional rights is therefore procedurally defaulted, and Thorne did not assert cause or prejudice to attempt to overcome the default.

Even if the claim were properly exhausted as a federal constitutional claim, the denial of a motion for severance does not deprive a criminal defendant of due process unless misjoinder rendered the trial fundamentally unfair. *United States v. Lane*, 474 U.S. 438, 449 (1986); *United States v. Chavis*, 296 F.3d 450, 461 (6th Cir. 2002). The Tennessee Court of Criminal Appeals observed that a decision not to sever lies within the trial judge's discretion and will not be overturned unless a defendant can show that the joint trial resulted in "compelling prejudice" and thus a fundamentally unfair trial. *Sandifer*, 2010 WL 5343202, at *7 (citations omitted). The court determined that the vast majority of the evidence Thorne claimed to be prejudicial would have been presented in an individual trial as well, including essentially all the evidence presented in support of the rapes and kidnappings, and that Thorne failed to establish that his defense was antagonistic to that of the other defendants. Thorne has not shown that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts in light of the evidence.

The petitioner is not entitled to relief on the basis of this claim.

### F.      Claim 5 – Ineffective Assistance of Counsel

Thorne asserts that his trial counsel was ineffective in myriad ways. Several of the claims were presented in the petitioner's initial post-conviction petition in the state court, but only one of the claims raised in Thorne's habeas petition—that counsel failed to discuss with the petitioner the benefits and possible consequences and ramifications of the petitioner's decision to testify at trial—was also raised in the petitioner's post-conviction appeal. That claim was clearly exhausted and is subject to review in this court.

---

[12]  Thorne relied entirely on Rule 14(c)(2) of the Tennessee Rules of Criminal Procedure and *State v. Bryant*, 654 S.W.2d 389 (Tenn. 1983), in support of this argument. *Bryant* involved a challenge to jury instructions and the trial court's denial of a motion to include a separate verdict form for each defendant. It did not involve severance or invoke federal law. The petitioner also referred to a Second Circuit case, *United States v. Figuero*, 618 F.2d 934 (2d Cir. 1980), but that case simply referred to Rule 403 of the Federal Rules of Evidence and the prosecutor's introduction of evidence prejudicial to one defendant in a joint trial.

### (1) The Exhausted Claim: Whether Trial Counsel Was Ineffective for Failing to Discuss the Petitioner's Decision to Testify

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment, a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing the petitioner's claims for ineffective assistance of counsel in this case, the Tennessee Court of Criminal Appeals first articulated and discussed at some length the standard for proving ineffective assistance of counsel, as established by the Supreme Court in *Strickland. See Thorne*, 2013 WL 4647623, at *8–9. Having articulated the appropriate standard, the court then addressed the petitioner's claim and concluded that the petitioner had failed to prove ineffective assistance of counsel based on the attorney's "advice to him about whether or not to testify." *Id.* at *9. The court noted that

counsel conceded that she was devastated by the unexpected death of her former supervisor the Saturday before Thorne's trial began. Regardless, as the court further observed, counsel testified

> that she spent over 110 hours in court and out of court preparing, investigating, and representing the Petitioner on this case. The trial court accredited counsel's testimony. The Petitioner has not pointed to any specific instances in which Counsel's performance was deficient or how any such alleged deficiency prejudiced him.

*Id.*

The question before this court is whether the Tennessee court's application of *Strickland* was unreasonable. The petitioner indeed testified at the post-conviction hearing that his trial attorney failed to discuss with him his Fifth Amendment right not to testify at trial or the consequences of his decision to testify. (Post-Conviction Hr'g Tr. at 7–8, ECF No. 16-29, at 8–9.) His trial attorney was unable to recall whether she had conducted such discussions with her client and therefore was unable to contest the petitioner's testimony. Thorne, however, did not state that he would have chosen not to testify if he had been adequately informed as to the consequences of testifying, nor did he indicate how he was prejudiced by testifying instead of choosing to invoke his Fifth Amendment right not to testify.[13] Accordingly, the Tennessee court's determination that the petitioner failed to establish any prejudice resulting from any alleged ineffectiveness on the part of his trial counsel was not based on an unreasonable determination of the facts in light of the evidence presented, and the court's application of *Strickland* was reasonable. The petitioner is not entitled to relief on the basis of this claim.

### *(2)    The Unexhausted Claims*

Many of Thorne's remaining ineffective-assistance claims were raised in the initial-review post-conviction proceedings or touched upon during the post-conviction evidentiary hearing, but none were presented to the Tennessee Court of Criminal Appeals. They are, therefore, procedurally defaulted and barred from review unless Thorne can establish cause for the default and resulting prejudice. Regarding the vast majority of his claims, Thorne makes no attempt to establish cause to overcome the default or resulting prejudice Such claims are therefore procedurally defaulted and barred from review. This includes subclaims 6(b), 6(d)–(l), and 6(r)–(w), as identified on page 6, above.

---

[13] Thorne implied that he believed he was prejudiced because the trial judge applied little weight at sentencing to the fact that Thorne had testified, but the record does not establish that he was sentenced more harshly as a result of his decision to testify.

Thorne does argue that the ineffective assistance of post-conviction counsel provides cause for the default of several of his claims of ineffective assistance of trial counsel, including his claims that trial counsel was ineffective for:

(1) failing to pursue independent psychological analysis of Thorne's mental health (Claim 6(c));

(2) failing to raise double jeopardy as a defense for especially aggravated kidnapping, aggravated robbery, facilitation of aggravated rape, and aggravated burglary (Claim 6(m));

(3) failing to raise intoxication as a defense (Claim 6(n));

(4) failing to raise duress as a defense (Claim 6(o));

(5) failing to request a jury instruction on the "natural probable consequences rule" (Claim 6(p)); and

(6) failing to request a jury instruction as to the elements necessary to find the defendant guilty beyond a reasonable doubt of especially aggravated kidnapping (Claim 6(q)).

(ECF No. 1, at 34 (citing *Martinez v. Ryan*, 566 U.S. ----, 132 S. Ct. 1309 (2012)).)[14]

As set forth above, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Until recently, a prisoner could not demonstrate cause by claiming that he had received ineffective assistance of counsel during state post-conviction proceedings. In *Martinez*, the Supreme Court held that the ineffective assistance of post-conviction counsel can establish "cause" to excuse the procedural default of a defendant's substantial claim of ineffective assistance at trial under certain circumstances. In *Trevino v. Thaler*, 569 U.S. ----, 133 S. Ct. 1911 (2013), the Supreme Court extended *Martinez* to apply to cases where a state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921. The Sixth Circuit Court of Appeals has recognized that "Tennessee defendants, too, are highly unlikely to have a meaningful opportunity to raise a claim of

---

[14] In this section of his petition, Thorne purported to list "[t]he substantial ineffective assistance of counsel claims that post-conviction counsel failed to pursue." (ECF No. 1, at 34.) The list nonetheless included a number of claims that clearly pertain to the allegedly ineffective assistance of *post-conviction* counsel; for instance, that counsel failed to "[g]ive petitioner time to study her petition for post-conviction relief since she didn't use the one he wrote up, and requested her to use." (*Id.*) The claims of ineffective assistance of post-conviction counsel are discussed in section V.L. of this memorandum, *infra*.

ineffective assistance of trial counsel on direct appeal," *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014), and that, under *Martinez* and *Trevino*, "ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial." *Id.* at *7 (citations omitted).

The *Martinez* exception nonetheless remains quite narrow. First, it requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding" and therefore does not "concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Martinez*, 132 S. Ct. at 1320. Thus, the default of Thorne's claims that his trial counsel was ineffective for failing to raise intoxication as a defense, failing to raise duress as a defense, and failing to pursue independent analysis of Thorne's mental health is not excused by the ineffective assistance of Thorne's post-conviction counsel, because these claims actually were raised in the "initial-review" collateral proceedings (Initial Pet'n for Post-Conviction Relief at 3, ECF No. 16-28, at 63; Post-Conviction Hr'g Tr. at 19, ECF No. 16-29 at 29), and addressed in the initial order denying post-conviction relief (ECF No. 16-28 at 69). These claims were defaulted as a result of post-conviction *appellate* counsel's failure to brief these issues to the Tennessee Court of Criminal Appeals. *Martinez* is therefore inapplicable to these claims.

The court must, however, consider whether the ineffective assistance of post-conviction counsel excuses the default of the petitioner's three remaining ineffective-assistance claims: the failure to raise double jeopardy as a defense; failure to request a jury instruction on the "natural probable consequences rule"; and failure to request that the jury determine all the elements necessary to establish the kidnapping convictions.

Under *Martinez*, the petitioner must establish that the underlying ineffective-assistance claims are "substantial." *See Martinez*, 132 S. Ct. at 1318–19 (noting that the prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"). In addition, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman v. Thompson*, 501 U.S. at 750. To establish that his claim is "substantial," a habeas petitioner must "show that his post-conviction relief counsel was ineffective under *Strickland v.*

*Washington*." *Clabourne v. Ryan*, 745 F.3d 362, 376 (9th Cir. 2014). That is, the petitioner must show both that his post-conviction counsel's performance was constitutionally deficient and that the petitioner was prejudiced by the deficiency. *Clabourne*, 745 F.3d at 376. Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [post-conviction] proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Clabourne* court recognized some "overlap" between the two prejudice requirements:

> Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a reasonable probability that the result of the post-conviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.

*Clabourne*, 745 F.3d at 377-78.

In other words, in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was "substantial" enough to satisfy the "actual prejudice" prong of *Coleman*. If not, because the "cause and prejudice" standard is conjunctive rather than disjunctive, the reviewing court would have no need to consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel.

With these principles in mind, the court turns to the consideration of the petitioner's remaining ineffective-assistance claims.

(a)     Failure to Argue "Natural and Probable Consequences Rule"

Although Thorne argues that his trial counsel was ineffective for failing to request a jury instruction on the "natural and probable consequences rule," his trial counsel did in fact raise that argument, and argued on appeal that the trial court erred in failing to include such an instruction. The Tennessee Court of Criminal Appeals rejected the claim, finding that this "instruction is not required for prosecution of facilitation of a felony found at Tennessee Code Annotated section 39-11-403. It is instead required when a defendant is prosecuted under the theory of criminal responsibility found at Tennessee Code Annotated section 39-11-402." *Sandifer*, 2010 WL 5343202, at *12 (citations omitted). Post-

conviction counsel had no basis for bringing a claim premised on trial counsel's ineffectiveness for failing to raise an argument she actually made. Moreover, the Tennessee appellate court concluded under Tennessee law that the instruction was not appropriate. This claim is not "substantial" for purposes of *Martinez*.

(b)      <em>Failure to Request That the Jury Determine All Elements of Kidnapping Charges</em>

The petitioner also asserts that his trial counsel was ineffective for failing to request a jury instruction as to the elements necessary to find the defendant guilty beyond a reasonable doubt of the crime of especially aggravated kidnapping, and that the default of this claim should be excused by the ineffective assistance of post-conviction counsel, who failed to raise the claim in post-conviction proceedings. In support of his claim that his trial counsel was ineffective, Thorne cites specifically to *State v. White*, 362 S.W.3d 559 (Tenn. 2012), and argues based on *White* that his counsel erred in failing to ensure that the jury in his case was instructed that it could find him guilty of kidnapping only if the "removal or confinement of a victim is independently significant from an accompanying felony." (ECF No. 4, at 26.)[15]

Indeed, in *White*, the Tennessee Supreme Court held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law," and that the separate due-process analysis to be conducted by the courts, as required by prior opinions, was no longer appropriate. *White*, 362 S.W.3d at 577–78. The court specifically held that, under this new standard, trial courts must

> ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as a rape or robbery. . . . [T]rial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction. In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony.

---

[15] Tennessee statute defines especially aggravated kidnapping, in relevant part, as the knowing removal or confinement of another unlawfully so as to interfere substantially with the other's liberty, accomplished with a deadly weapon or the display of any article used or fashioned to lead the victim reasonably to believe it to be a deadly weapon or where the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-13-302 & -305.

*Id.* at 578. The court expressly noted, however, that its holding did not "articulate a new rule of constitutional law or require retroactive application." *Id.*

Thus, although *White* was issued just over a month after Thorne's initial post-conviction petition was filed and his counsel likely could have filed an amended petition to incorporate a claim of ineffective assistance of trial counsel based on *White*, Thorne cannot show that such a claim would have been successful. Moreover, because *White* was issued approximately three and a half years after Thorne's initial conviction, he cannot show that his counsel was ineffective for failing to anticipate the holding in *White*.

It is clear to this court that the evidence supporting Thorne's separate convictions for kidnapping was thin, and that the procedure embraced by the Tennessee Supreme Court in *White* offers better due-process protections than the procedure still in use at the time of Thorne's trial. Nonetheless, based on timing alone, this court concludes that Thorne cannot establish that his trial counsel was ineffective or, consequently, that his post-conviction counsel was ineffective for failing to argue to the contrary. The court therefore concludes that this claim is not sufficiently "substantial" to satisfy *Martinez*, and the petitioner is not entitled to relief on the basis of this claim.

Because the court also finds this to be an evolving area of law worthy of further review, the court will grant a certificate of appealability as to this claim.

### (c)      Failure to Argue that Double Jeopardy Barred Convictions

Finally, the petitioner asserts that his post-conviction counsel was ineffective for failing to show that trial counsel was ineffective for failing to "raise double jeopardy as a defense for especially aggravated kidnapping, aggravated robbery; or facilitation of aggravated rape; and aggravated burglary." (ECF No. 1, at 34.)

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 793 (1969), among other things, "protects against multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas*, 491 U.S. 376, 381 (1989). Thus, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

In the federal courts, the test established in *Blockburger v. United States*, 284 U.S. 299 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson*, 467 U.S. at 499 n.8. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Id.*; *Banner v. Davis*, 886 F.2d 777, 780–81 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Missouri v. Hunter*, 459 U.S. 359, 368 (citing *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974)).

The state court in Thorne's case did not conduct an express double-jeopardy analysis in connection with any of Thorne's post-conviction claims, but in addressing his due process claim it focused on the element of the charge of especially aggravated kidnapping that clearly is not incorporated into the offense of especially aggravated robbery—the requirement that the defendant knowingly move or confine another so as to interfere with the other's liberty. *Compare* Tenn. Code Ann. §§ 39-12-302 & -305 (setting forth elements of especially aggravated kidnapping) *with* Tenn. Code Ann. §§ 39-13-401 & -402 (defining the elements of aggravated robbery). Proof of that element clearly was not required to prove the charge of especially aggravated robbery. *Cf. Richardson v. State*, No. M2009-01542-CCA-R3-PC, 2011 WL 704462, at *6 (Tenn. Ct. Crim. App. Feb. 28, 2011) (holding that counsel was not ineffective for failing to argue that double jeopardy barred the defendant's conviction for especially aggravated kidnapping as well as attempted especially aggravated robbery, stating: "Especially aggravated kidnapping requires proof of an unlawful removal or confinement of the victim by the defendant, and this element is not present in the crime of attempted especially aggravated robbery. Also, especially aggravated robbery requires proof of theft from the victim, an element not contained in especially aggravated kidnapping.").

Tennessee courts have likewise held that dual convictions for burglary and robbery (or theft) do not violate the double-jeopardy prohibition, because robbery is a crime that involves theft, while burglary "is an offense against the security interest in possession of property rather than an offense against the legal title or ownership of the property." *State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999). *See also* Tenn. Code Ann. §§ 39-14-402 & -403 (defining aggravated burglary as entry into a habitation without the effective consent of the property owner with the intent to commit a felony, theft or assault). Aggravated robbery, on the other hand, is defined as the theft of property from the person of another accomplished by violence, accomplished with a deadly weapon or display of an item used or fashioned to lead the victim to believe it to be a deadly weapon. Tenn. Code Ann. §§ 39-13-401 & -402. In other words, robbery does not require entry into a habitation, and burglary does not require actual theft.

Likewise, the crime of facilitation of aggravated rape (Tenn. Code Ann. §§ 39-1-403 (facilitation of a felony), 39-13-502 (aggravated rape)) includes elements that are not encompassed by the definitions of the other crimes of conviction (specifically, unlawful sexual penetration), and does not include elements necessary to the definitions of the other offenses discussed above.

It is therefore clear with respect to each of the offenses of which the petitioner was convicted that the Tennessee legislature intended to authorize cumulative punishments for robbery, burglary, rape, and kidnapping, and that the elements of each of these crimes, as they were defined for the jury, did not completely overlap. There was no double-jeopardy violation, and trial counsel therefore was not ineffective for failing to raise a double-jeopardy defense. Likewise, post-conviction counsel was not ineffective for failing to assert to the contrary. This claim is not "substantial" for purposes of *Martinez*.

### G. Claim 6 – Ineffective Assistance of Appellate Counsel

The petitioner also raises a number of claims of ineffective assistance of appellate counsel. He did not raise these claims in his post-conviction appeal. As a result, the claims are defaulted and barred from review unless the petitioner can establish cause and prejudice sufficient to overcome the default.

Thorne asserts cause for the default in the form of ineffective assistance of his post-conviction counsel, specifically for failing to argue that appellate counsel was ineffective in that she did not present a separate argument on appeal that the evidence was insufficient to support the verdict for especially aggravated kidnapping or that the kidnapping convictions violated due process. (ECF No. 1, at 34.) He

relies on *Martinez* in support of his argument that the ineffective assistance of post-conviction counsel can constitute cause for the default of his claim of ineffective assistance of appellate counsel. *Martinez*, however, does not apply to excuse the default of a claim of ineffective assistance of *appellate* counsel. *See Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding . . . ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.").

The claims of ineffective assistance of appellate counsel are therefore procedurally defaulted and barred from review.

### H.    Claim 7 – Erroneous Jury Instructions

The petitioner asserts that the trial court provided erroneous definitions of the terms "knowingly" and "substantial interference" in the jury instructions, and also erroneously defined the crime of aggravated rape to include a *mens rea* of recklessly (ECF No. 4, at 34).

The petitioner did not raise these claims in the state courts; they are, therefore, procedurally defaulted and barred from review. Even if that were not the case, issues regarding jury instructions are normally considered to be matters of state law not cognizable in federal habeas corpus. *See, e.g.*, *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In order to amount to a constitutional violation, the challenged jury instructions must have "infected the accused's trial to such a degree as to constitute a clear violation of due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). The petitioner has not attempted to argue or show that the subject jury instructions were so egregiously erroneous that they violated his right to due process.

The petitioner is not entitled to relief on the basis of this claim.

### I.    Claim 8 – The Trial Court's Denial of the Motion *in Limine*

Thorne filed several motions *in limine* in the trial court, and he does not expressly indicate on which motion his claim is based. However, the context and his factual argument in support of the claim suggest that he contests the trial court's denial of his motion to sequester the State's two primary witnesses—the victims of the offenses. (*See* ECF No. 1, at 24 ("Counsel did not properly object or cross examine the victims testimony. After Victim R.N. made inconsistent testimony the other Victim A.B. was able to come after him and clear up any confusion. . . This was very prejudicial to Petitioner Thorne.").)

The petitioner raised this claim in his direct appeal, where he argued that the denial of his motion to sequester the victim-witnesses violated Rule 615 of the Tennessee Rules of Evidence. He acknowledged that the Tennessee constitution gives victims the right to be present at all proceedings where the defendant has the right to be present, Tenn. Const. Art. 1, § 35, but he argued that the practice nonetheless violated his "rights to due process and a fair trial, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution." (Thorne Dir. App. Br. at 57, ECF No. 16-23, at 65.)

The Tennessee Court of Criminal Appeals rejected the claim on the basis that the presence of the victim-witnesses did not violate Rule 615 and that, even if the trial court erred in denying the motion to sequester, violations of the sequestration rule are subject to harmless-error analysis. The court concluded that A.B. had testified many times at different hearings, such that Thorne and the other defendants had the ability to bring out any inconsistencies between her trial testimony and her prior statements during their cross-examination. R.N. had not previously testified to the extent A.B. had, but he was the first witness called to testify by the prosecution and therefore could not have been influenced by any other witness's trial testimony. The court therefore concluded that Thorne was unable to show how he was prejudiced by the victim's presence in the courtroom during the trial. The court did not address Thorne's constitutional argument.

Nonetheless, the petitioner has failed to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. In fact, the Supreme Court has never held that the failure to exclude witnesses can violate due process. *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008).[16] As the Ninth Circuit noted in *Larson*, the decision to exclude (or not to exclude) witnesses was, under the common law, left to the discretion of the trial court. *See id.* (citing *Holder v. United States*, 150 U.S. 91, 92 (1893)). The Federal Rules of Evidence now require the federal district court to exclude witnesses upon motion by a party, but "there is no indication that this rule has a constitutional basis." *Id.* (citing Fed. R. Evid. 615; 29 Wright & Miller, Federal Practice & Procedure §

_____

[16] In *Larson*, the Ninth Circuit rejected the habeas petitioner's claim that the state trial court's refusal to exclude any of the state's witnesses during trial violated his right to a fair trial. The state appellate court had concluded that the trial court erred in refusing to exclude the witnesses but that the defendant failed to show that he was prejudiced by the error.

6241 ("Rule 615 departs from the common law in that, when a party requests exclusion of witnesses, such an order is mandatory rather than a matter of discretion.")); *cf. Mathis v. Wainwright*, 351 F.2d 489, 489 (5th Cir. 1965) (holding that the trial court's alleged failure to invoke the rule of sequestration of witnesses did not raise a question that was cognizable in a federal habeas corpus proceeding and did not amount to a deprivation of petitioner's constitutional rights).

The court therefore finds that the petitioner has failed to state a claim that is cognizable on habeas review. The court further notes, however, that even if this claim were reviewable, the petitioner has failed to show that witness-victim A.B. tailored her testimony to corroborate that of R.N. or that he was prejudiced in any way by the trial court's refusal to sequester the victim-witnesses.

The petitioner is not entitled to relief on the basis of this claim.

**J.      Claim 9 – The Trial Court's Denial of Motion to Require Election of Facts**

The petitioner argues that the trial court erred in "denying motion to require the state to elect the facts upon which it was relying for two counts of especially aggravated kidnapping." (ECF No. 1, at 25.) In support of this claim, he asserts that he could not prepare to defend against the state's case as a result of the trial court's denial of his motion.

The petitioner presented this claim to the Tennessee Court of Criminal Appeals in his direct appeal, but only as a matter of state law. That court rejected the claim on purely state-law grounds. *See Sandifer*, 2010 WL 5343202, at *10 ("In *State v. Adams*, 24 S.W.3d 289 (Tenn. 2000), our supreme court determined that the State is not required to make an election of offenses when the crime at issue is considered to a single, continuous course of conduct. Previous to *Adams*, our supreme court held that kidnapping is a continuous course of conduct. Therefore, the State is not required to make an election of offenses in the case at hand." (some internal citations omitted)).

Because the claim is not presently raised as a federal constitutional claim, it does not state a claim that is cognizable on habeas review. Even if it were presented as a federal claim, it was not presented as such in the state courts and would therefore be procedurally defaulted. The petitioner does not plead any basis for excusing the default, so the claim is clearly barred from review.

**K.      Claim 10 – Trial Court's Alleged Violation of *Apprendi v. New Jersey***

The petitioner claims that the trial court committed constitutional error when it enhanced his

sentence on the basis of facts not charged in the indictment and found by a jury, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (ECF No. 4, at 44–51.) More specifically, he argues that the enhancement of his sentences based on the trial court's finding that he was a leader in the commission of the offenses and that he possessed or employed a firearm during the commission of the offenses violated *Apprendi*, and he also argues that the imposition of consecutive sentences violated *Apprendi*. The petitioner did not raise this claim in the state courts and it is therefore procedurally defaulted and barred from review.

Regardless, he cannot establish that his sentence violated *Apprendi*. In that case, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Four years later, the Court clarified that "statutory maximum"

> for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely v. Washington*, 542 U.S. 296, 303–04 (2004) (emphasis in original; internal citations omitted). As set forth above, the Supreme Court has determined that consecutive sentences based upon facts determined by a judge rather than a jury do not violate *Apprendi*. *Oregon v. Ice*, 555 U.S. 160, 164, 169 (2009).

Nor can Thorne show that the enhancements as applied by the judge violated federal law. Thorne was sentenced under the 2005 Sentencing Reform Act, which was enacted for the purpose of complying with *Apprendi* and *Blakely*.[17] *See State v. Ramirez*, No. M2009-01617-CCA-R3-CD, 2011 WL 2348464, at *23 (Tenn. Ct. Crim. App. June 8, 2011) ("The Legislature enacted the 2005 Sentencing Reform Act, which complied with *Blakely* by eradicating presumptive sentences and establishing advisory sentencing guidelines, with the changes taking effect on June 7, 2005."). The Supreme Court has expressly acknowledged that Tennessee's amended sentencing act does not violate federal law. *See Cunningham v. California*, 594 U.S. 270, 294 n.18 (2007) (citing the 2005 version of Tenn. Code Ann. § 40-35-210(c)

---

[17] Tennessee's previous sentencing scheme, set forth in the state's Criminal Sentencing Reform Act of 1989, Tenn. Code Ann. § 40-35-210 (2000), was found to violate *Apprendi* and *Blakely*. *State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007).

as a statute that "permit[s] judges genuinely 'to exercise broad discretion . . . within a statutory range,' which 'everyone agrees' encounters no Sixth Amendment shoal'" (quoting *United States v. Booker*, 543 U.S. 220, 233 (2005)). The petitioner has not shown that he was sentenced above the statutory maximum for any of his convictions.[18] The petitioner's sentence did not violate *Apprendi* based on the enhancements applied by the sentencing judge.

This issue is therefore without merit.

### L.  Claim 11 – Ineffective Assistance of Post-Conviction Counsel

Thorne asserts that he received ineffective assistance from his post-conviction counsel insofar as she failed to request to hold the evidentiary hearing in another court instead of the same court of conviction (ECF No. 1, at 34); "failed to include Thorne[']s issues for relief in post-conviction" (*id.*); "did not give petitioner "time to study her petition for post-conviction relief" and "didn't use the one he wrote up, and requested her to use" (*id.*); "didn't outline the questions she would ask at evidentiary hearing, [to] make sure petitioner cover[ed] everything" (*id.*); failed to investigate, notify, or call witnesses to testify on Thorne's behalf at the post-conviction hearing (*id.*); failed to go over the questions she would ask and the areas she would cover with the petitioner prior to the hearing (ECF No. 4, at 41); failed to pursue independent expert analysis of Thorne's mental health or present an expert witness (*id.*); and failed to give Thorne time to go over the post-conviction petition filed on his behalf prior to the hearing or to give him time to ensure the presence of the witnesses he wanted to call at the hearing (*id.*)

The petitioner's freestanding claim that his post-conviction counsel was ineffective is not a cognizable basis for federal habeas relief. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings."); *Wallace v. Sexton*, --- F.3d

---

[18] Thorne was convicted of two Class "A" felonies, four Class "B" felonies, and one Class "C" felony and sentenced as a Range I standard offender on each of these claims, though his kidnapping judgments show that he was characterized as a "violent" offender for purposes of sentencing on those offenses. (*See* Judgments, ECF No. 16-2, at 24–30.) Under Tennessee law, a Range I offender is simply defined as one who is not sentenced as a multiple, persistent, career offender, or violent career offender, or one who is an "especially mitigated" offender. Tenn. Code Ann. § 40-35-105. All of these types of offenders are so characterized based on the number of previous felony convictions. Tenn. Code Ann. §§ 40-35-106 through -109. The Range I sentencing range for a Class A felony is 15 to 25 years; for Class B, 8 to 12 years; and for Class C, 3 to 6 years. Tenn. Code Ann. § 40-35-12(a). The petitioner was sentenced in the mid- to upper-range for each conviction: 21 years on the two Class A felony convictions (to be served at 100%, based on the "violent" classification); 10 years each on the Class B felonies, and 4 years on the Class C conviction.

----, 2014 WL 2782009, at *11 (6th Cir. June 20, 2014) (same, citing *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012)). Because the petitioner's claim does not present a cognizable basis for federal habeas review, relief is precluded by 28 U.S.C. § 2254(a).

      **M.**      **Claim 12 – Denial of Post-Conviction Relief**

Finally, the petitioner claims that the post-conviction court "committed constitutional error when it denied petitioner the relief he sought out in his petition for postconviction relief." (ECF No. 4, at 7.) In support of this claim he cites the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and argues that his trial and post-conviction counsel were ineffective.

This claim is not cognizable on habeas review and in any event was not exhausted in the state courts and is now procedurally defaulted. Any substantive claim of error by the post-conviction court had to have been raised in the petitioner's post-conviction appeal to be fully exhausted, and any claims of ineffective assistance of trial or post-conviction counsel have been addressed elsewhere in this opinion. The petitioner is not entitled to relief on the basis of this claim.

**VI.**      **CONCLUSION**

For the reasons set forth herein, Glenard Cortez Thorne's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

The vast majority of Thorne's claims and subclaims are procedurally defaulted or do not raise federal constitutional issues. Thorne has not made a substantial showing of the denial of a constitutional

right with respect to these claims, and they do not merit further review. A COA will not be issued as to these claims and subclaims.

As discussed herein, however, the court finds that two of Thorne's claims (or subclaims) merit further review. These include his claims that

(1) his convictions for especially aggravated kidnapping violated due process; and

(2) his trial counsel was ineffective for failing to argue that the jury should have been required to decide whether the proof established that the removal or confinement of the victims was independently significant from the accompanying felonies to justify separate kidnapping convictions, and that the ineffective assistance of post-conviction counsel establishes cause under *Martinez* to overcome the default of this claim.

As to these claims, the court will grant a COA.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge